The appellant, Ronald Eric Oswalt, was convicted of trafficking in cocaine, a violation of Ala. Code 1975, §13A-12-231, and was sentenced to 10 years' imprisonment. The sentence was split, and the appellant was ordered to serve three years' imprisonment and the balance of his sentence was suspended upon the condition that he be placed on probation for five years following his release. He appeals, raising three issues.
After an unsuccessful effort to suppress evidence of the contraband forming the basis *Page 363 
of the charge, the appellant waived a trial by a jury, and the case was submitted to the trial court for a decision on stipulated facts. The parties stipulated, inter alia, that the appellant was the person charged with the offense; that the transaction occurred in his residence in Tuscaloosa County as testified to by the officers in the hearing on the motion to suppress; and that the contraband was, in fact, cocaine, weighing 28.54 grams. It was also stipulated that the transcript of the suppression hearing, at which the appellant sought to suppress the cocaine because it was seized by the officers on the basis of an alleged invalid search warrant, would also be submitted to the trial court for its consideration in making its judgment.
 I.
The appellant first contends that the trial court erred in denying his motion to suppress the cocaine seized in his residence pursuant to a prospective or "anticipatory" search warrant. An anticipatory search warrant "is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." 2 W. LaFave, Search and Seizure
§ 3.7(c) (3d ed. 1987). The appellant argues that an anticipatory warrant is invalid in Alabama. We have not previously addressed the validity of anticipatory warrants in this state.
We begin our discussion by recounting the circumstances surrounding the issuance of the warrant and the seizure of the cocaine. Officer N.E. Willingham of the narcotic division of the Alabama Department of Public Safety received information from John Plowman, an informer, that the appellant was involved in the distribution of illegal drugs. As a result, the appellant became the subject of an investigation. Subsequently, on July 28, 1992, the informer reported to Willingham that he had had a conversation with the appellant and that the appellant had expressed an interest in purchasing cocaine and marijuana. On instructions from Willingham, the informer met with the appellant the following day and told him that he knew someone with cocaine and marijuana for sale and that the price would be $1,100 per ounce for cocaine and $1,400 per pound for marijuana. On July 30, 1992, the informer reported to Willingham that the appellant wanted to purchase one ounce of cocaine and that he wanted it delivered to his residence in Northport on August 1, 1992.
At 10:40 a.m. on August 1, 1992, Willingham obtained an anticipatory search warrant authorizing the search of the appellant's person and residence for evidence of cocaine and "drug distribution" after completion of the cocaine transaction. On that same date, Officer Paul Johnson of the Department of Public Safety, posing as a "drug dealer," obtained slightly more than an ounce of cocaine from the vault at the Department of Public Safety and, accompanied by the informer went to the appellant's residence, arriving around noon. Johnson and the informer entered the residence at the appellant's invitation and discussed the transaction with him in his living room. The appellant gave Johnson $550 in cash and gave him a personal check for $550. Johnson handed the appellant the cocaine and, after examining it, the appellant stated that he was satisfied. He expressed a desire to purchase more cocaine and some marijuana. The entire conversation was transmitted from a transmitter concealed on Johnson's person to Willingham, who was waiting outside with two other officers.
It was understood by the officers that when the transaction was complete, the informer would leave the house and that that would be the signal for Willingham and the other officers to enter the residence and execute the search warrant. When the informer left the residence at 12:12 p.m., Willingham and the other officers entered the residence and conducted a search pursuant to the search warrant. They seized the cocaine that was the subject of the transaction, along with a pistol, a smoking device containing marijuana residue, "booklets on drugs," ledgers containing evidence of prior drug sales, and the check and currency involved in the transaction. When Willingham entered the residence, the appellant was sitting on the couch and the cocaine was on the couch "right beside his knee." *Page 364 
The affidavit supporting the issuance of the search warrant states, in pertinent part, as follows:
 "My name is N.E. WILLINGHAM, I am a law officer with the . . . Alabama Department of Public Safety, Narcotic Division.
 "YOUR AFFIANT HAS BEEN A POLICE OFFICER FOR APPROXIMATELY 18 YEARS AND SINCE FEBRUARY 1985 HAS BEEN EMPLOYED WITH THE ALABAMA DEPARTMENT OF PUBLIC SAFETY AS A STATE TROOPER. SINCE JULY 1988 YOUR AFFIANT HAS BEEN ASSIGNED TO THE NARCOTIC DIVISION AS A NARCOTIC AGENT. YOUR AFFIANT HAS PARTICIPATED IN, BEEN INVOLVED IN AND LED NUMEROUS INVESTIGATIONS INVOLVING THE ILLEGAL USE, POSSESSION, DISTRIBUTION AND THE TRAFFICKING OF CONTROLLED SUBSTANCES AND VIOLATIONS ARISING THEREFROM.
 "FURTHER, YOUR AFFIANT IS CONDUCTING AN INVESTIGATION IN TUSCALOOSA COUNTY, ALABAMA, FOCUSING ON RONALD ERIC OSWALT, WHITE MALE, 04-10-70 AND WHO RESIDES AT THE PREMISES KNOWN AS 1801 HARPER ROAD, LOT 6, QUAIL RIDGE TRAILER PARK, NORTHPORT, ALABAMA. YOUR AFFIANT HAS RECEIVED INFORMATION FROM A COOPERATING INDIVIDUAL WHO HAS IDENTIFIED OSWALT AS BEING A PERSON INVOLVED IN THE DISTRIBUTION OF CONTROLLED SUBSTANCE.
 "ON TUESDAY 07-28-92 THE COOPERATING INDIVIDUAL STATED TO YOUR AFFIANT THAT HE HAD HAD A CONVERSATION WITH OSWALT, IN WHICH OSWALT STATED THAT HE WAS LOOKING TO PURCHASE A QUANTITY OF COCAINE AND MARIJUANA.
 "AT THE DIRECTION OF THE AFFIANT, THE COOPERATING INDIVIDUAL MET WITH OSWALT ON WEDNESDAY 07-29-92. AT THIS TIME THE COOPERATING INDIVIDUAL TOLD OSWALT THAT HE KNEW SOMEONE WHO HAD COCAINE AND MARIJUANA TO SELL. THE COOPERATING INDIVIDUAL TOLD OSWALT THAT THE COCAINE SOLD FOR $1,100 AN OUNCE AND THAT THE MARIJUANA SOLD FOR $1,400 A POUND.
 "ON THURSDAY 07-30-92 THE COOPERATING INDIVIDUAL STATED THAT OSWALT TOLD HIM THAT HE WANTED TO PURCHASE AN OUNCE OF COCAINE. OSWALT REQUESTED THAT THE TRANSACTION TAKE PLACE AROUND 10:00 AM ON SATURDAY 08-01-92 AT OSWALT'S RESIDENCE IN NORTHPORT, ALABAMA.
". . . .
 "ON SATURDAY 08-01-92 ALABAMA DEPARTMENT OF SAFETY NARCOTIC AGENT PAUL JOHNSON WILL BE WORKING IN A[N] UNDERCOVER CAPACITY POSING AS A DRUG DEALER. AGENT JOHNSON WILL HAVE A QUANTITY OF COCAINE IN HIS POSSESSION AND WILL TRAVEL TO THE RESIDENCE OF RONALD ERIC OSWALT IN NORTHPORT, ALABAMA. AGENT JOHNSON WILL HAVE A CONVERSATION WITH OSWALT CONCERNING OSWALT'S DESIRE TO PURCHASE A QUANTITY OF COCAINE. AGENT JOHNSON WILL CONDUCT A COCAINE TRANSACTION WITH OSWALT.
 "AGENT JOHNSON WILL HAVE ON HIS PERSON AN ELECTRONIC TRANSMITTER TO ALLOW THE MONITORING OF CONVERSATION. UPON COMPLETION OF THE COCAINE TRANSACTION AGENTS ON SURVEILLANCE WILL GO TO THE RESIDENCE OF OSWALT AND CONDUCT A SEARCH OF OSWALT AND HIS PREMISES FOR THE COCAINE AND EVIDENCE OF DRUG DISTRIBUTION.
 "Your affiant shows that based upon the above and foregoing facts and information, he has probable cause to believe, that the aforesaid property is concealed upon the aforesaid persons, property and/or vehicles and is subject to seizure and makes this *Page 365 
affidavit so that a warrant may issue to search the aforesaid persons, property and/or vehicles."
The search warrant reads, in pertinent part, as follows:
 "Affidavit having been made before me by N.E. WILLINGHAM that he has reason to believe that on the person of RONALD ERIC OSWALT and that on the premises known as 1801 HARPER ROAD, LOT 6, QUAIL RIDGE TRAILER PARK, NORTHPORT, ALABAMA, TUSCALOOSA COUNTY ALABAMA, there is now being concealed certain property, NAMELY COCAINE AND EVIDENCE OF DRUG DISTRIBUTION which are unlawfully in the possession of RONALD ERIC OSWALT in violation of TITLE 13A CHAPTER 12 SECTION 212, CODE OF ALABAMA, 1975.
 "And as I am satisfied that there is probable cause to believe that the property so described will be concealed on the person, premises, or automobile, described above and that the foregoing grounds for application for issuance of this search warrant will exist contingent to the events alleged herein, YOU ARE COMMANDED ON SATURDAY 08-01-92 TO PLACE A ELECTRONIC TRANSMITTER ON THE PERSON OF DPS NARCOTIC AGENT PAUL JOHNSON, WHO WILL BE WORKING IN A[N] UNDERCOVER CAPACITY POSING AS A DRUG DEALER, AND [TO] CONDUCT SURVEILLANCE AS AGENT JOHNSON GOES TO THE RESIDENCE OF RONALD ERIC OSWALT. AGENT JOHNSON WILL HAVE A CONVERSATION WITH OSWALT CONCERNING OSWALT'S DESIRE TO PURCHASE COCAINE. AGENT JOHNSON WILL SELL OSWALT A QUANTITY OF COCAINE. AGENTS ON SURVEILLANCE WILL GO TO OSWALT'S RESIDENCE UPON COMPLETION OF THE COCAINE TRANSACTION.
 "[A]nd when the above described facts occur, within the next 12 hours from the signing of this affidavit warrant, YOU ARE COMMANDED TO SEARCH FORTHWITH the person, premises, or motor vehicle named, for the property specified, and make the search anytime in the day or night, and if the property be found there to seize it, leaving a copy of this warrant, and prepare a written inventory of the property seized and return this warrant and bring the property before me within ten (10) days of this date, as required by law."
The exclusionary rule of evidence in Alabama is rooted in theFourth Amendment of the United States Constitution and in Article I, § 5, of the Constitution of Alabama, 1901. The constitutional provisions are similar, and both guarantee protection against unreasonable searches and seizures. Both provide that no warrant shall issue to search any place or to seize any person or thing, except on probable cause supported by oath or affirmation. The Fourth Amendment is applicable to the states through the Due Process Clause of theFourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684,6 L.Ed.2d 1081 (1961); Knox v. State, 42 Ala. App. 578, 172 So.2d 787
(1964), cert. denied, 277 Ala. 699, 172 So.2d 795 (1965).
Rule 3.8, A.R.Crim.P., specifies the grounds for issuance of search warrants in this state. The rule reads as follows:
 "A search warrant authorized by this rule may be issued if there is probable cause to believe that the property sought:
"(1) Was unlawfully obtained;
 "(2) Was used as the means of committing or attempting to commit any offense under the laws of the State of Alabama or any political subdivision thereof;
 "(3) Is in the possession of any person with intent to use it as a means of committing a criminal offense, or is in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its discovery; or
 "(4) Constitutes evidence of a criminal offense under the laws of the State of Alabama or any political subdivision thereof."[1] *Page 366 
Rule 3.9, provides in pertinent part, the following:
 "A warrant shall issue only on affidavit sworn to before the issuing judge or magistrate authorized by law to issue search warrants, establishing grounds for issuing the warrant. If the judge or magistrate is satisfied that probable cause to believe that grounds for the application exist, he shall issue a warrant naming or describing the person and particularly describing the property and the place to be searched."
The appellant does not question the sufficiency of the affidavit and warrant in describing the place to be searched and the contraband sought nor does he question the showing of probable cause to believe that the cocaine would be in his residence on August 1, 1992. However, he questions the validity of the warrant because, he says, at the time of its issuance, there was no probable cause to believe that the cocaine was,at that time, located on the premises. He argues that Rule 3.8 does not authorize the issuance of anticipatory search warrants, but authorizes the issuance of search warrants only when it is shown that probable cause that evidence of crime is located in a particular place or is in possession of a particular person at the time the warrant is issued. He argues that the use of the phrase "[i]s in the possession of" in Rule 3.8(3) shows an intent that possession be before or contemporaneous with the issuance of the warrant, and not contemporaneous with the time of the execution of the warrant.
After reviewing the appropriate constitutional provisions, § 15-5-2, Ala. Code 1975, and rules, we can find no requirement that possession be present or contemporaneous with the issuance of the warrant in this state and there is no provision, statute, or rule that prohibits the issuance of a warrant to search at a time in the near future for contraband it is anticipated will be at the place of the search at that time. Numerous courts, both state and federal, have upheld the validity of anticipatory search warrants under governing search warrant provisions and factual circumstances similar to those in the present case. See United States v. Garcia, 882 F.2d 699
(2d Cir. 1989), cert. denied, Grant v. United States,493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989), and cases cited therein; Alvidres v. Superior Court, 12 Cal.App.3d 575,90 Cal.Rptr. 682 (1970); People v. Glen, 30 N.Y.2d 252,331 N.Y.S.2d 656, 282 N.E.2d 614 (1972); LaFave, supra, § 3.7(c). While we recognize that there are cases holding that anticipatory search warrants violate the Fourth Amendment, we believe the "better view" is, and recent cases have consistently held, "that anticipatory search warrants are not inherently beyond the warrant process permitted by theFourth Amendment." LaFave, supra, § 3.7(c) (footnote omitted). Most courts that have considered this issue have concluded that the use of anticipatory warrants is constitutional. Commonwealth v.Soares, 384 Mass. 149, 424 N.E.2d 221 (1981). While the United States Supreme Court has not directly addressed the question, it has in effect approved the procedure, when it indicated inKatz v. United States, 389 U.S. 347, 88 S.Ct. 507,19 L.Ed.2d 576 (1967), that it was constitutionally permissible to obtain a search warrant for the seizure of oral communications through the use of electronic surveillance.
Logic as well as the rationale underlying theFourth Amendment warrant requirement supports the issuance of anticipatory warrants in situations like the one in this case. See Johnson v. State, 617 P.2d 1117 (Alaska 1980); Alvidres v.Superior Court; Commonwealth v. Soares; LaFave, supra, § 3.7(c). Courts that have upheld the issuance of anticipatory warrants have done so, in large part, because of the strong preference for judicial approval before searching private premises. See United States v. Garcia. Usually the facts advanced to issue an anticipatory warrant are stronger than in the typical case where the warrant is based upon the last known location of the contraband. LaFave, supra, § 3.7(c). An examination of Willingham's affidavit in the present case leads to the inescapable conclusion that there was probable cause to believe that the cocaine would be in the appellant's residence at some time on August 1, 1992. The delivery of the cocaine was controlled by the officers, and the execution of the warrant was conditioned on the delivery and sale of the cocaine *Page 367 
to the appellant in his residence. At the time the warrant was issued, the magistrate could reasonably have assumed that, if the specified conditions occurred within the narrow time frame specified in the supporting affidavit, the warrant was firmly based on probable cause. The strong policy of encouraging the use of warrants is not served where, in circumstances like those in this case, officers are required to await the delivery of known contraband to the premises to be searched or the delivery and sale to the person to be searched. Such requirements put the officers in the position of having to choose between (1) an immediate search without a warrant under some exception to the warrant requirement, risking being second-guessed later by the courts, United States v. Garcia;
LaFave, supra, § 3.7(c); or (2) a delay in which to obtain a warrant, risking the destruction, movement, or concealment of the contraband, see Alvidres v. Superior Court; LaFave, supra, § 3.7(c).
As we have stated, we have found no Alabama law or other authority that prohibits the issuance of a warrant to search at a future time for contraband that will not be at the place of the search until the warrant is executed. Thus, we construe our rules and § 15-5-2 to encompass not only possession at the time the warrant is issued but also possession at the time the warrant is executed, and thus to permit anticipatory search warrants. We believe that sound reasoning and public policy support this construction. We hold that anticipatory search warrants are valid in Alabama. We conclude that the search warrant in the present case was validly issued and that the search conducted pursuant thereto was legal and that the motion seeking to suppress that evidence was properly denied.
We caution that in issuing anticipatory search warrants judges and magistrates should take care to require evidence establishing probable cause that the contraband will be at the specified premise at the time of the search. An affidavit supporting the application should show not only that the affiant believes a delivery and acceptance of contraband are going to occur, but also how he has obtained this belief, how reliable his source is, and what part the authorities will play in the delivery. United States v. Garcia. The judge or magistrate should protect against premature execution by listing, in the warrant, conditions governing the execution of the warrant that are "explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents." Id. at 703-04. In issuing an anticipatory warrant, it would be appropriate for the judge or magistrate to insert a direction in the search warrant making execution contingent on the happening of an event, which evidences probable cause that the item to be seized is in the place to be searched and which will prevent premature execution. United States ex rel. Beal v.Skaff, 418 F.2d 430 (7th Cir. 1969); People v. Glen. The judge or magistrate issuing the warrant should define with reasonable precision the circumstances that must be present before the warrant can be executed. Commonwealth v. Soares. Where the expected delivery of the contraband is not controlled by the authorities, "the magistrate should require a particularized showing of strong reason to believe the contraband will in fact be on the targeted premises at the time the warrant is executed." Rivera v. United States, 928 F.2d 592, 603 (2d Cir. 1991). And, of course, the warrant should particularly describe the place to be searched and the persons or things to be seized. United States v. Garcia.
 II.
The appellant contends that the trial court erred in denying his motion for a judgment of acquittal because the state allegedly failed to prove that the cocaine was in his possession. Clearly, there is no merit to this contention. The evidence of possession was sufficient for the trial court to conclude beyond a reasonable doubt that the appellant had possession of the cocaine.
 III.
The appellant contends that the trial court erred in denying his motion for judgment of acquittal because, he says, he was entrapped by a law enforcement officer into committing the offense. There is no merit in this contention. The evidence shows that the *Page 368 
appellant was predisposed to commit the offense and that the officers simply afforded him an opportunity to do so. SeeThompson v. State, 575 So.2d 1238 (Ala.Cr.App. 1991);Chillous v. State, 441 So.2d 1055 (Ala.Cr.App. 1983).
 IV.
The state contends that this case is due to be remanded to the trial court for proper sentencing. It is clear that the trial court did not enhance the appellant's sentence under § 13A-12-231(13), which provides as follows:
 "Notwithstanding any provision of law to the contrary, any person who has possession of a firearm during the commission of any act proscribed by this section shall be punished by a term of imprisonment of five calendar years which shall be in addition to, and not in lieu of, the punishment otherwise provided, and a fine of $25,000.00; the court shall not suspend the five-year additional sentence of such person or give such person a probationary sentence."
The record shows that a firearm was seized from the appellant's residence when his residence was searched. Under these facts, we find it necessary for the trial court to conduct another sentencing hearing and, if it finds the firearm enhancement statute applicable, to resentence the appellant accordingly.
The trial court shall take all action directed in sufficient time to permit the circuit clerk, at the earliest possible time within 60 days of the release of this opinion, to make a proper return to this court showing the action taken.
REMANDED WITH INSTRUCTIONS.*
All Judges concur.
[1] The Committee Comments to Rule 3.8 state, "This rule is essentially the same as Alabama Code 1975, § 15-5-2, and shall govern unless otherwise provided by law."
* Note from the Reporter of Decisions: On August 18, 1995, on return to the remand, the Court of Criminal Appeals affirmed by unpublished memorandum; on October 20, 1995, the court denied rehearing, without opinion.