MURDOCK, Justice
(dissenting).
For the reasons discussed below, I respectfully dissent.
I find the cases of Lewis v. State, 589 So.2d 758 (Ala.Crim.App.1991), Nelms v. State, 568 So.2d 384 (Ala.Crim.App.1990), and Thomas v. State, 353 So.2d 54 (Ala.Crim.App.1977), to be distinguishable from the present case. The problematic, past-tense verb usage in each of these cases was part of the informant’s statement and was in reference to the occurrence at some unknown time in the past of the illegal activity itself or the informant’s observation of that activity.[2] In contrast, in the present case the “past tense” reference is found only in the affiant’s statement that “I have received” certain information from the informant. If this makes the affidavit deficient, then very few affidavits will be able to pass constitutional muster. Obviously, any time an affidavit describes information from an informant, it is of necessity information the affiant has received before signing the affidavit.
The real question is what is the information the affiant has received from the informant. According to the affidavit in this case, it is that, at the time the affidavit is signed, the defendant “is manufacturing and selling methamphetamine.”
The main opinion disagrees with this understanding of the affidavit. It asserts that the present tense of the phrase “is manufacturing and selling” is qualified by the reference to prior activity in the clause “I have received information.” I believe the converse is true. Moreover, the issuing court reasonably could have understood the converse to be true. By stating that “I have received information from a confidential informant that Jeff Green is manufacturing and selling methamphet-amines inside of the residence and in the [adjacent] shed,” the affidavit impliedly and necessarily states that the affiant has received information from the informant that speaks to the current state of affairs. Compare Harrelson v. State, 897 So.2d 1237, 1239 (Ala.Crim.App.2004) (finding that affiant’s statement that “[i]nformation was also received from the informant indicating that the suspect stored some of the stolen property in an open-faced barn structure located approximately 1/4 mile east of the suspect’s residence,” speaks to the current state of affairs at the time of the execution of the affidavit).[3]
*499 In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court stated:
“ ‘[T]he term “probable cause,” according to its usual acceptation, means less than evidence which would justify condemnation .... It imports a seizure made under circumstances which warrant suspicion.’ [Locke v. United States, 7 Crunch 339, 348 (1813)]....
“We also have recognized that affidavits ‘are normally drafted by nonlawyers in the midst and haste of a criminal investigation....’ [United States v.] Ventresca, 380 U.S. 102, 108 [ (1965) ].... The rigorous inquiry into the Spinelli [v. United States, 393 U.S. 410 (1969),] prongs and the complex superstructure of evidentiary and analytical rules that some have seen implicit in our Spinelli decision, cannot be reconciled with the fact that many warrants are — quite properly ... —issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings....
“Similarly, we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate’s ‘determination of probable cause should be paid great deference by reviewing courts.’ Spinelli, supra, 393 U.S., at 419.”
462 U.S. at 235-36, 103 S.Ct. 2317.
“The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the ‘veracity’ and ‘basis of knowledge’ of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a ‘substantial basis for ... concluding]’ that probable cause existed.”
Gates, 462 U.S. at 238-39, 103 S.Ct. 2317 (emphasis added). As I read it, and considering it in its entirety, the affidavit at issue here gave the issuing court “substantial basis for ... concluding that probable cause existed.” As an appellate court, this Court should defer to an issuing court’s “common-sense” understanding of the wording of the affidavit presented to it.
Alternatively, even if the affidavit in this case did not provide a reasonable basis for the issuing court to conclude that it had probable cause to believe that the manufacture and sale of methamphetamine was ongoing at the time the affidavit was executed, I agree with the Court of Criminal Appeals that the evidence obtained pursuant to the resulting warrant should have been admissible under the “good-faith exception” to the exclusionary rale. Specifically, I cannot conclude that the affidavit is “so lacking [in] indicia of probable cause as to render official belief in its existence entirely unreasonable.” Straughn v. State, 876 So.2d 492, 500 (Ala.Crim.App.2003)(citing United States v. Leon, 468 U.S. 897, 921, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).
Finally, I note that Lewis v. State, Nelms v. State, and Thomas v. State all were appeals of convictions in which the *500 question of the adequacy of the affidavit and resulting warrant was directly at issue. In the present case, we are not confronted with the direct question whether the affidavit and warrant pass constitutional muster; rather, the question is whether counsel’s representation of the defendant was reasonable. Effective representation does not entitle a defendant to error-free representation. Saffold v. State, 570 So.2d 727, 731 (Ala.Crim.App.1990). “In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel’s assistance was reasonable considering all the circumstances.” Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (emphasis added). At a bare minimum, I cannot conclude, in light of what are at least substantial questions as discussed above, that counsel’s representation of Green fell below constitutional standards because counsel failed to object to the validity of the warrant in the present case. See generally Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (“Judicial scrutiny of counsel’s performance must be highly deferential .... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.”).[4]
BOLIN, J., concurs.

. See Lewis, 589 So.2d at 759 (finding deficient an affidavit that stated merely that the informant advised the affiant that " 'said informant had been at the above-described residence and observed a quantity of powder cocaine' " (emphasis added)); Nelms, 568 So.2d at 385 (rejecting an affidavit that stated merely that the informant " 'stated to the affiant that they [sic] have seen Crack-Cocaine in the residence of' " the defendant (some emphasis omitted)); Thomas, 353 So.2d at 56 (finding that the affidavit "fail[ed] to show that the information received from the informant was fresh as opposed to being remote” where the affidavit slated merely that the informant " 'had obseived heroin being used and sold' ” at the defendant's address (emphasis added)).

. The Harrelson court further explained:
"In this case, the affidavit provides that the informant said that Harrelson, at the time of the execution of the affidavit, had stolen goods stored in a building on his property, that is, the presence of the stolen goods was ongoing at the time of the execution of the affidavit. As opposed to absolutely no reference to the date or time, as was the problem in Nelms and Lewis, the affidavit in this case contained not only a general time frame, but also it provided that at the moment of tire execution of the affidavit Harrelson was in possession of the stolen goods.”
*499 897 So.2d at 1239-40. The Harrelson court also stated:
“Finally, the plain meaning of the statement in the affidavit that reads, 'The informant stated that Mr. Harrelson had air-conditioning units, ladders, tools, and other property at his residence that were thought to be stolen from Auburn University,’ indicates that, as of the date of the affidavit, the stolen goods were at that point in time on Harrelson's property.”
897 So.2d at 1242 (emphasis added).

. For the reasons discussed above, I also am not persuaded that counsel's conduct necessarily resulted in any prejudice to the defen-clant so as to meet the second prong of the Strickland test.